## Case No. 10,751.

### PARKER v. UNITED STATES.

[2 Wash. C. C. 361.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1809.

EMBARGO LAWS—FORFEITURE OF VESSEL—WITHIN FOREIGN JURISDICTION—PENALTIES.

1. Information against the brig Agnes, a coasting vessel, for a breach of the embargo laws, she having proceeded from the United States, in December, 1808, to St. Bartholomew's, where she was sold to the appellant, and afterwards returned to Philadelphia with a cargo.

2. A forfeiture of the vessel, imposed by the embargo laws, cannot be enforced after she has arrived within the jurisdiction of a foreign power; but the United States must then resort to the penalties imposed by those laws, and proceed for double the value of the vessel and cargo, to which they are entitled, upon their violation.

[Appeal from the district court of the United States for the district of Pennsylvania.]

This was an information, filed in the district court against the brig Agnes, alias the Gustaf Ekerman [Parker, owner], for a breach of the first embargo law, and the supplement thereto. The claim of the captain, on behalf of the owner, Mr. Imlay, of St. Bartholomew's, states that she was purchased from a Mr. Darrel, of Antigua, by his said owner at the island of St. Bartholomew's, for two thousand dollars paid, and that a regular bill of sale was executed by the attorney of Darrel, on the 28th of March, 1809. That his said owner made the purchase, bona fide, and without notice of any of the circumstances stated in the information, or that the vessel had done any thing against the embargo laws of the United States, so as to subject her to forfeiture. It appeared in evidence that this vessel was built in Virginia, was enrolled by the name of "The Agnes," and licensed as a coaster, in 1808. In December, 1808, she cleared from Edgarton in Massachusetts, for Portland, and was carried to the West Indies. It did not appear by what means Darrel became entitled to her. On the 29th of April, 1809, she arrived at the port of Philadelphia, with a cargo taken in at St. Bartholomew's, and was duly admitted to an entry. The manifest of the captain stated her to have been built in Nova Scotia. Between the time of her entry and seizure, certain repairs were made to her, and materials furnished, at the request of the captain, by certain persons who filed their petition in the district court, to be paid out of the sales, in case of condemnation. A decree, pro forma, condemning the vessel, passed the district court, from which an appeal was taken.

The questions made, were, first, whether the vessel is liable to forfeiture in the hands of a bona fide purchaser? Cases cited for the United States: 1 C. Rob. Adm. 115, 271; 2 C. Rob. Adm. 198; 3 C. Rob. Adm. 84, 85; [Glass v. The Betsey] 3 Dall. [3 U. S.] 6; [Rose v. Himely] 4 Cranch [8 U. S.] 268. On the other side: [U. S. v. Grundy] 3 Cranch [7 U. S.] 337.

Secondly, are material men entitled to be paid out of forfeited property? On the affirmative were cited Gardner v. The New Jersey [Case No. 5,233]; Act Assem. of Pa. March, 1784, giving a lien to such persons. 3 C. Rob. Adm. 84; Doug. 546, E. Contra: 2 C. Rob. Adm. 195; Gardner v. The New Jersey [supra]; 2 H. Bl. 607; 5 C. Rob. Adm. 194; 1 Johns. 471.

WASHINGTON, Circuit Justice. The first and principal question is, are the United States entitled to claim a forfeiture and condemnation of this vessel, for the cause stated in the information? The first embargo law went no farther than to prohibit the sailing of all vessels, from the ports of the United States to any foreign port, except such as might be under the immediate direction of the president, and foreign vessels; and to authorize the president to make use of the navy for carrying this prohibition into effect. This law also prohibited registered or sea-letter vessels, having goods on board, from proceeding from one port of the United States to another, without bonds being first given to reland the cargo within the United States. The supplement to this law, which passed soon after, declares, "that if any vessel shall, during the continuance of the first act, depart from any port of the United States, without a permit or clearance, or shall, contrary to the provisions of either act, proceed to a foreign port, or trade with, or put on board of any other vessel, any goods; such vessel and goods shall be wholly forfeited, and if the same shall not be seized, the owner, agent, freighter, or factor of such vessel, shall, for every such offence, forfeit and pay a sum equal to double the value of the vessel and cargo, and shall never after be allowed a credit for duties." If the words used in the third section of the supplement, which are above quoted, be construed literally, so as to give to the United States an option to seize the property, or to let it alone, it will not be easy to distinguish this from the case of U. S. v. Grundy [supra]; because they would amount to this, that the vessel and cargo shall be forfeited, if the United States shall choose to seize them, or if not, then double the value; which would be precisely to give an election to the government, to take the one or the other; in which case it is decided, that until the election is made, no change of property takes place, either immediately, or by relation to the offence. This construction, however, is rejected by the district attorney, and is certainly not to be supported, since it would be extraordinary to give to the government an

---

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the supreme court of the United States, under the supervision of Richard Peters, Jr., Esq.]

election in all cases, and under every possible circumstance, to take the thing itself, or the double of its value. In the registering act, the punishment for a false oath, is forfeiture of the vessel, or its value, which gives a fair alternative to the government. If the words "shall not," be construed "cannot," which we think they ought, the question will be, at what time does the forfeiture of the double value accrue? But, first, it may be necessary to consider in what the offence consists, for which the forfeiture of the property is given? Departing from one port, without a permit or clearance, though with intention to go to some other port in the United States, constitutes one offence. Proceeding to a foreign port, though without a clearance from the port of departure, to some other port in the United States, is a distinct offence, and is the one for which this information is filed. But is it necessary to consummate the offence, that the vessel should actually enter the foreign port? We think not, for the following reasons: First, that such a construction would defeat the obvious intention of the law, which was to protect the property of our citizens from capture by the belligerents, as well as to induce a change of conduct in those powers, in respect to our neutral rights, by withholding from them the supplies, which their necessities might require. But this policy would have been defeated, if, notwithstanding the embargo, our vessels might freely navigate the ocean, where the danger of capture existed, and whence the wants of the belligerents might be supplied, by transhipping cargoes from one vessel to another. Another reason against such a construction of the law, is, that if the offence be not complete until the vessel shall enter the foreign port, the remedy for enforcing the forfeiture by seizure of the property, would at the same moment become ineffectual; because, within a foreign jurisdiction, no seizure could be made, and a case like the present would seldom occur, of the property being brought back to the United States. It seems proper, therefore, to consider the forfeiture as having accrued, whenever the vessel sails for a foreign port, although she has not entered it.

The inquiry may now be properly made, at what time does the forfeiture of the double value accrue? The answer obviously is, whenever the forfeiture of the property cannot be made effectual by seizure. But it cannot be contended, that so long as a possibility exists of the property returning to the United States, the forfeiture of the double value, and the right to sue for it, remain suspended; and, consequently, some reasonable time must be fixed, when the right to sue for the double value attaches. Two forfeitures cannot, under this law, exist at the same time. If the one *cannot be* made available, in consequence of the escape of the thing itself, then the other is substituted in its stead; whence it would seem necessarily to follow, that when the right to claim the double value attaches, the forfeiture of the property itself, for which the substitute is given, ceases. It is no answer to say that the United States are not obliged to sue for the double value, as soon as their right to claim it attaches, but that they may wait for the chance of the return of the property, when it might be seized; for the question does not depend upon a choice of remedies, but upon the vesting of a right to a particular forfeiture. If the forfeiture of this vessel continued from the time when the offence was committed, until the time when she might be seized, then the right to claim the double value, never could in the mean time attach, unless by supposing either that there did, at some period, exist a forfeiture both of the property and of the double value, or that the forfeiture of the double value depends upon the will of the United States, instead of the circumstance that the property cannot be seized; neither of which positions, we think, can be maintained. If the forfeiture of the double value has accrued, at any time between the commission of the offence and the return of the property, and it be admitted that two forfeitures cannot, under the fair construction of this law, exist at the same time, then the right to the double value must extinguish the right to the property, which cannot, upon any legal principle, be revived by the return of the property to the United States, particularly after it has passed into the hands of a bona fide purchaser.

Without determining at what precise time the right to sue for the double value attaches, it is sufficient, in this case, to say that no possible objection could be stated to the action, after the vessel had got within a foreign jurisdiction.

This opinion renders any decision upon the claims of the material men unnecessary. The sentence of the district court must be reversed.